OPINION OF THE COURT
John J. Ark, J.
Petitioners, National Association of People with Disabilities (NAPD) and Friends of People with Disabilities (Friends), commenced this CPLR article 78 proceeding seeking an order annulling the Town Clerk’s "determination” to "cancel and *913 revoke” their bingo licenses and requiring the Town to issue them amended licenses. They also complain that they were not provided with adequate notice of the hearing which was held to determine whether the Town’s actions were proper.
Petitioners applied for and received authorized organization status from the New York State Racing and Wagering Board to conduct bingo events. Respondent, Greece Town Board, pursuant to General Municipal Law article 14-H, and by local law and referendum, was given the power to issue bingo licenses in the Town of Greece on May 6, 1958.
The procedure followed by the parties after the issuance of the original license was to amend the existing license each month by adding the specific dates for the upcoming month by a duly filed application to amend the bingo license. This procedure is in accord with part 5813 (9 NYCRR) of the Rules of the New York State Racing and Wagering Board and is done when the license is still in effect.
In March of 1995, the Town Clerk delayed the issuance of the amended license until mid-April thereby causing NAPD to cancel several events to its financial detriment. The Town Clerk finally issued the amended license to NAPD on April 15, 1995. Petitioner Friends made application for May’s events on April 19, 1995. After considerable delay, the Town Clerk, by letter of April 28, 1995, decided not to issue an additional license to NAPD and not to issue an amendment to Friends. The stated reasons for the nonissuance were various alleged violations of the Bingo Licensing Law by the petitioners.
Although several issues were raised by the parties, the threshold question alluded to by the petitioners is by what authority did the Town Clerk oversee the licensing, regulation and supervision of bingo games?
The Town Board as "the governing body of the municipality” has specific responsibilities pursuant to the Bingo Licensing Law (General Municipal Law §§ 481, 482, 484, 492). These responsibilities and powers may be delegated to an officer or officers designated by "the governing body of the municipality” (General Municipal Law § 498).
Although required to receive the application for a bingo license (General Municipal Law § 480 [1] [a]), the Town Clerk has no inherent statutory authority to take any other actions regarding a bingo license. The Clerk may be the officer designated for these purposes by the Town Board. In this case, however, the Clerk had not been delegated any authority for *914 the conduct of investigations and hearings or for the supervision of the operation of the games. Although Town Law § 30 (7) genetically authorizes the Town Clerk to "issue all licenses”, a bingo license may only be issued after "the governing body of the municipality”, i.e., the Town Board, has made certain determinations (General Municipal Law § 481 [1] [a]). There is no indication the Town Board either made these prerequisite determinations itself or authorized the Clerk or any other officer to do so.
As prohibited by CPLR 7803 (2), the Town Clerk has proceeded without jurisdiction since her actions subsequent to the issuance of the bingo license were the responsibilities of the Town Board and were taken by the Town Clerk without proper delegation and/or designation by the Town Board. As regards the original issuance of the bingo license, the Clerk may have had generic authority pursuant to Town Law § 30 (7), but the issuance is only effective if the prerequisite determinations had been done by the Town Board or its properly authorized designee. The Town Clerk ostensibly made the necessary prerequisite determinations but did so without authorization by the Town Board. Accordingly, the bingo license is a nullity.